UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLIN C. STEVENS,

    Petitioner,

v.                                                    Case No. 07-11255

KRISTIN M. STEVENS, a/k/a           HONORABLE AVERN COHN
KRISTIN M. STENQUIST,

    Respondent.

_____/

## MEMORANDUM AND ORDER DENYING PETITION FOR RETURN OF CHILD

### I. Introduction

This is a petition for the return of a minor child under the International Child Abduction Remedies Act (the Act), 42 U.S.C. §§ 11601-11610, the implementing legislation for the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention). Petitioner Colin C. Stevens (Petitioner) seeks the return of his minor child, GMMS, alleging that Respondent Kristin M. Stevens a/k/a Kristin M. Stenquist (Respondent) wrongfully removed her from Scotland to Michigan.

Before the Court is Petitioner's petition and Respondent's Motion for Summary Judgment and Denial of Petitioner's Request for Return of the Child.[1] The Court heard oral argument on July 27, 2007.[2] For the reasons that follow, the petition is DENIED.

---

[1] Although Respondent styled her paper as both a motion for summary judgment and denial of Petitioner's request, the Court treats the filing as a response to the petition.

[2] Neither party requested an evidentiary hearing.

II. Background

Petitioner was born in 1964 in Scotland, United Kingdom. He is a citizen and resident of Scotland. Respondent was born in 1976 in the United States and is a citizen of the United States.

Petitioner and Respondent met in the Summer 2003 in Paris. They dated off and on until January 2004 when Respondent became pregnant with Petitioner's child. In June 2004, Petitioner and Respondent began living together in Scotland.

On September 12, 2004, GMMS was born in Scotland to Petitioner and Respondent.

On November 6, 2004, Petitioner and Respondent were married in Scotland.

According to Respondent, the marriage was tumultuous. Respondent says that Petitioner abused alcohol and drugs and physically and verbally abused her, resulting in police intervention.[3]

In July 27, 2005, Petitioner and Respondent traveled to Edinburgh to the Consulate General of the United States where they both signed papers to register GMMS's birth abroad as a United States citizen, obtain a Social Security card for GMMS, and a passport.

Respondent says they also jointly disposed of GMMS's various baby items no longer needed and donated them to charity. Respondent also donated all of her personal belongings which would not fit into three suitcases.

On August 15, 2005, Respondent and EMMS traveled to Michigan and have

---

[3]Respondent is still seeking police records from Scotland, and the Court granted her permission to file them once they were received.

resided in Bloomfield Hills with Respondent's parents ever since.  The airline tickets were apparently round trip, with an open-ended return date.  Respondent explains that this was done because a round trip ticket was less expensive than a one way ticket.  The tickets are not part of the record.  At the hearing, the parties agreed that the tickets likely expired within one year of purchase, or by August 2006.

Petitioner says that in approximately November 2005, he consulted Solicitors in Scotland to determine his legal rights regarding the return of GMMS.  In March of 2006, Petitioner directed Solicitors to prepare the necessary documents to obtain GMMS' return.  Petitioner then claims that there was a delay in the Solicitors Office.

On July 18, 2006, almost a year after Respondent and GMMS came to Michigan, Petitioner submitted an Application for Return with the Central Authority of Scotland.  The National Center for Missing and Exploited Children (NCMEC) received the application in October 2006.  Despite the Application identifying the whereabouts of GMMS with their Michigan address, the NCMEC was unable to locate GMMS until January 22, 2007.  The NCMEC located counsel for Petitioner on February 6, 2007.

On March 23, 2007, nearly two years after Respondent and GMMS left Scotland, Petitioner filed the instant petition.  Petitioner also requested a preliminary injunction that Respondent and GMMS surrender their passports to the United States Marshal.  On March 28, 2007, the Court entered a stipulated order in which Respondent agreed not to leave the jurisdiction or remove GMMS from the jurisdiction and agreed to surrender their passports.

To date, Petitioner remains in Scotland.  He asserts that Respondent took his passport.  Respondent denies this and says that Petitioner's passport expired in 2001

3

and Petitioner did not renewed it.

The parties vigorously dispute the nature and intent of Respondent and GMMS's travel to Michigan. Petitioner maintains that Respondent and GMMS were on an extended vacation to visit Respondent's parents and that they planned to return to Scotland. He says that approximately two weeks after Respondent and GMMS left Scotland, he discovered that they would not be returning and that he spent the next several months attempted to persuade them to return. He further says that he cannot point precisely to the point in time in which he concluded that Respondent and GMMS would not be returning to Scotland. He asserts it was at least when the airline tickets expired in August of 2006.

Respondent, however, says that Petitioner agreed that (1) the marriage had failed, (2) they should separate in preparation for divorce, (3) Respondent and GMMS should leave for the United States, and (4) their child would have a better life in the United States. Respondent further says that Petitioner at all times knew the move to Michigan was permanent, that Petitioner and Respondent have continued in contact, and Petitioner has always know of her and GMMS's whereabouts.

### III. Legal Standard

#### A. Hague Convention

Both the United States and Scotland are signatories to the Hague Convention, which seeks "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence . . ." Hague Convention, Preamble. Pursuant to Article 19 of the Convention and section 2(b)(4) of the Act, a federal district court has the

authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim.  Under the Convention, the removal of a child from one country to another is wrongful when:

> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, Article 3.

Under the Act, Petitioner has the burden of showing by a preponderance of the evidence that the removal was wrongful.  42 U.S.C. § 11603(e)(1).  If Petitioner meets his burden, the burden shifts to Respondent who may assert several affirmative defenses to removal, that if proven, will prevent the return of the child.  The four defenses are as follows:

> 1) there is a grave risk that the return of the child would expose the child to physical or psychological harm - proven by clear and convincing evidence.  Hague Convention, Article 13 b, 42 U.S.C. § 11603(e)(2)(A);
> 2) return of the child "would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms"- proven by clear and convincing evidence.  Hague Convention, Article 20, 42 U.S.C. § 11603(e)(2)(A);
> 3) by a preponderance of the evidence that the proceeding was commenced more than one year after the abduction and the child has become settled in its new environment - proven by a preponderance of the evidence.  Hague Convention, Article 12, 42 U.S.C. 11603(e)(2)(B); or
> 4) that Petitioner was not actually exercising the custody right at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention - proven by a preponderance of the evidence.  Hague Convention, Article 13 a, 42 U.S.C. § 11603(e)(2)(B).

As an initial matter, the Court assumes that Petitioner has met his threshold showing.  GMMS was born in Scotland, her father is Scottish, her parents were married

5

in Scotland, and she resided in Scotland continuously until her removal. This would appear sufficient to show habitual residence at the time of removal. See Friedrich v. Friedrich, 983 F.2d 1396, 1402 (6th Cir. 1993).

Respondent says that GMMS should not be returned because three of the above defenses apply. The Court will consider each defense in turn.

### B. Article 12 - More than One Year Since Removal

The Court considered the contours of this defense in Wojcik v. Wojcik, 959 F. Supp. 413 (E.D. Mich. 1997), explaining:

> Article 12 of the Convention provides that a child shall be returned "forthwith" if less than a year passed between the wrongful retention and "the commencement of the proceedings before the judicial or administrative authority of the Contacting State where the child is." If, however, more than a year passed between retention and commencement of the proceedings, and the mother can demonstrate by a preponderance of the evidence "that the child[ren] [are] now settled in [their] new environment," the children need not be returned.
> . . . .
> The Act provides that "the term 'commencement of proceedings', as used in article 12 of the Convention, means, with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section." 42 U.S.C. § 11603(f)(3) (emphases added). Subsection (b) of § 11603 states:
>> [a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.

959 F. Supp at 418. Thus, the Court found that "the relevant time period is the time between the wrongful retention and the commencement of a civil action," a "civil action" being defined as petition for return under the Hague Convention.

Here, it is undisputed that Petitioner did not commence this action until nearly two years after GMMS was removed from Scotland. Petitioner asserts two reasons why

6

the one-year period does not apply, neither of which are persuasive. First, Petitioner says the one-year did not commence until the "open" airline tickets expired, which was allegedly in May 2006. Thus, Petitioner says the petition filed in March 2006 was timely. Putting aside the fact that there tickets themselves are not in the record, Petitioner cites no authority for this proposition. Second, Petitioner says the one-year should be equitably tolled because of processing delays at the Central Authority and at the NCMEC. Again, Petitioner provides no authority for this proposition.

Thus, the only question is whether GMMS has "settled" into her environment. The evidence, consisting of the affidavit of Respondent, establishes the following by a preponderance of the evidence:

- GMMS has resided in the same address in Michigan since August 2005 (22 months) with Respondent and Respondent's parents;

- GMMS was ten months old at the time of removal and is now 2 ½;

- Michigan has been her only home for the majority of her life;

- GMMS has bonded with her extended maternal family members;

- GMMS attends a twice-weekly toddler program at her local library; and

- GMMS attends church regularly.

Based on the totality of the above, the Court concludes that GMMS is settled into her environment. As such, Respondent has met her burden regarding the application of the Article 12 exception.

### C. Article 13(a) - Consent and Acquiescence

Respondent also says that Petitioner consented to removal and/or acquiesced to GMMS' retention in Michigan. Petitioner disputes this. The evidence, however,

7

appears to favor Respondent's position. Two weeks prior to GMMS and Respondent's departure, Petitioner and Respondent traveled to Edinburgh to secure a United States passport for GMMS and signed applications for GMMS to become a United States citizen and obtain a Social Security card. These documents required Petitioner to consent to GMMS having United States citizenship. While the fact that Petitioner desired his child to have United States citizenship does not itself establish that he consented for her to permanently reside in the United States, it does tend to support Respondent's position. Moreover, Petitioner does not dispute Respondent's allegation that they jointly donated several of GMMS' personal belongings to charity before GMMS traveled to Michigan. While Petitioner says the times to be donated were items GMMS had outgrown, these actions indicate that Petitioner knew GMMS was leaving Scotland and going to live in the United States permanently. Petitioner's statements to the contrary in his affidavit are not supported by any corroborating evidence. However, the Court does not find that Respondent has meet her burden by a preponderance of the evidence; thus, this exception does not apply.

D. Article 13(b) - Danger to the Child

Respondent also says that GMMS should not be returned to Scotland because there is a grave risk that return will expose GMMS to physical or psychological harm. In support, Respondent states that GMMS has not seen Petitioner since she was ten months old, Respondent has been her only primary care giver, and the one to whom GMMS looks for her sense of security and well-being. GMMS' developmental needs militate in favor of her remaining in Michigan. However, in Friedrich v. Friedrich, 78 F.3d 1060 (6th Cir. 1996), the Sixth Circuit stated that grave risk of harm exists in only

8

two situations: (1) where return of the child puts the child in imminent danger prior to resolution of the custody dispute, for example, returning a child to a war zone, or (2) in cases of serious abuse or neglect, or extraordinary emotional dependence, where the court in the country of the child's habitual residence may be incapable or unwilling to give the child adequate protection. 78 F.3d at 1068. Under Friedrich, Respondent's allegations as to bonding and attachment are not sufficient to invoke the grave risk of harm exception.

It is also noted that Respondent alleges Petitioner was abusive to her during their marriage and that there are police reports substantiating the abuse. As noted above, Respondent has requested, but has yet to obtain, the police reports from Scotland. Absent the police reports, which Petitioner does not appear to dispute exist, the Court cannot corroborate Respondent's allegations of abuse or whether such evidence demonstrates a grave risk of harm should GMMS be returned to Scotland, although it certainly raises a concern.

### E. Observations

As stated at the hearing, the Court is puzzled by Petitioner's petition. At no time since Respondent and GMMS came to Michigan has Petitioner traveled, or attempted to travel, to the United States to see GMMS. He has not commenced any proceedings in Scotland regarding custody since GMMS' removal, although Scottish law proscribes removal of a child from their habitual residence without the consent of both child's custodial parents. See Section 2(3) of the Children (Scotland) Act of 1995 (Exhibit F of Petitioner's petition). Moreover, despite the apparent agreement that the marriage has

9

broken down, Petitioner has not commenced divorce proceedings in Scotland.[4]  Thus, it is unclear what benefit, if any, would there be to granting the petition under these circumstances.

IV.  Conclusion

In denying the petition and finding that GMMS should not be returned to Scotland, the Court expressed no opinion on a custody determination.  Rather, the Court is merely holding that a custody decision be made in the United States.  Indeed, the Hague Convention makes clear that courts "are [not] to decide on the merits of rights of custody," Art. 16, and "[a] decision under this Convention concerning the return of the child shall not be taken to be a determination of the merits of any custody issue." Art. 19.

SO ORDERED.


Dated:  June 28, 2007                     s/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 28, 2007, by electronic and/or ordinary mail.

                                           s/Julie Owens
                                          Case Manager, (313) 234-5160

---

[4] At the hearing, counsel for Petitioner suggested that a action for divorce under Scottish law requires a two year separation (non-cohabitation) period.  That does not appear entirely correct.  Scottish law provides that an action for divorce may be commenced in the case of an "irretrievable breakdown of a marriage" which is defined to include the following (1) no cohabitation for a continuous period of one year and the "defender" consents to the filing of the divorce action or (2) no cohabitation for a continuous period of two years.  See U.K. Stat. 1976 c. 39 § 1.